Good morning, Your Honors. May it please the Court, my name is Leslie Pack. I'm appointed counsel for Appellant David Reyes, and I would like to reserve three minutes of my time for rebuttal. Please watch the clock. Thank you. This appeal concerns the narrow issue of whether Mr. Reyes properly exhausted his administrative remedies before suing medical personnel at Mule Creek State Prison for deliberate indifference to his medical needs. The district court erred in holding that Mr. Reyes failed to exhaust his administrative remedies by failing to comply with a state regulation requiring inmates to identify individuals involved in their grievances and describe their involvement. This regulation became effective a mere four months before Mr. Reyes filed his grievance complaining of back pain and requesting pain medication. During that four months, Mule Creek failed to modify its grievance forms to reflect the requirements of the new regulation. It would be really helpful to me in this case if you focused your argument on the ground that the state never raised this exhaustion issue during the administrative process, which is to say they fully processed his claims under merits. As I read the decisions from our sister circuits, they say if that happens, the purpose of exhaustion has been served and that it has been exhausted. In other words, he raised a claim, they treated it under merits at all three stages, they never said to him, your form doesn't name the people identified. Why isn't that enough to constitute exhaustion? That's what your brief argues. Tell us why it is enough to constitute exhaustion. Yes, Your Honor. The prison officials who reviewed Mr. Reyes's grievance understood that he was complaining that he wasn't receiving adequate pain medication. Right. And their response was the superiors said you didn't need it and the superiors were these two people. So I'm just trying to figure out what information they were lacking during this process. Was there any? I don't believe so. I think Mr. Reyes included in his grievance adequate information to put the prison on notice that he was in severe pain. He repeats throughout his grievance that he's in pain and in the action requested space, he requests enough pain medication to provide him relief. So he said it was Dr. Hashimoto who denied him the pain medication. And then on review, the state said, well, we support Dr. Hashimoto's decision and here are our reasons. And one of the reasons was because the pain medication committee says it isn't worth it. It's not warranted. His pain is being controlled by other medications. So that was the reason they gave for saying his claim against Dr. Hashimoto was not valid. But they never, but then Mr. Reyes didn't then go and say, well, the pain, I also think the pain committee is erroneous. I don't know if he would have had to bring a separate grievance, but he never did. So how did he exhaust his complaint against the members of the pain committee, which I guess are Mr. Smith and Mr. Heatley, when he never brought a challenge to the pain committee's decision? Well, he did challenge the decision by complaining that Dr. Hashimoto had made changes to his pain medication. He did not say that Dr. Hashimoto misdiagnosed him or reached improper conclusions after an examination. He said that Dr. Hashimoto had made changes and that is not inconsistent with the existence of a blanket policy directing Dr. Hashimoto to cut Mr. Reyes's pain medication to save money. In fact, Dr. Hashimoto's decision cannot be divorced from the underlying policy that required him to cut. You said in your gray brief that you weren't, that his complaint didn't include a claim to some sort of blanket policy. And I didn't see any claim to a blanket policy, which seems like a completely different claim than he was denied his pain medication. Well, Mr. Reyes is not attempting to overturn a blanket policy or create some sort of systemic change. Both his grievance and his complaint were focused on the fact that he was being denied pain medication. And in his complaint, he requests adequate pain medication and his claim is based on the denial of that medication. So he did not need to specifically allege in his grievance that it was Dr. Smith and Heatley who caused it. That's the... But weren't, weren't the answers to his grievance at each level essentially saying no without naming them? These two doctors were on a pain, there was a pain committee that determined this was okay. Yes. Wasn't that what was said? That was the response at every level, was it not? Yes. At every level, the prison officials responding to Mr. Reyes's grievance indicated that the pain medication... So I guess what Judge Akuta is asking you, and I hadn't thought about this, is was Mr. Reyes then required to say, oh no, I'm expanding my grievance to include the pain committee as opposed to just grieving against Dr. Hashimoto? No, the PLRA's exhaustion requirement does not require inmates to identify all individuals who could be sued in later litigation. The California regulations do. I mean, that's, that's what the issue we're looking at. And the Supreme Court has told us in Woodford that the petitioner is supposed to follow the state regulations. Right. Well, so Woodford v. No did not overturn Butler v. Adams, which held that an inmate exhausts his administrative remedies if he completes an administrative appeals form and pursues his appeal through all levels of review. Yeah. So assume for a moment that they, that, that he didn't comply with the regulation that requires naming everyone. Because I think on that one, your argument is difficult because he didn't name everyone. Whether or not they waived that by sending him a form that didn't ask for it is a separate question. Even if he didn't comply with the regulation, don't the cases you cite say you've nonetheless exhausted if the state process doesn't say you failed to, you failed to comply, but rather treats your claim on its merits? Yes. And here, Mule Creek State Prison officials did address Mr. Reyes's claim. But the question is, what did he exhaust? I mean, he obviously exhausted his claim against Dr. Hashimoto, but he didn't, he didn't name him in the complaint. He exhausted his claim that he was being denied adequate pain medication. And the... So if he had just said, I, I'm not getting adequate pain medication and named no, and didn't name anyone, that would be adequate for him to exhaust his claims against every doctor at the prison? Is that your view? Well, I believe it would be enough to exhaust his claims against individuals who were involved in the decision to cut off his pain medication. But again, focus on the second point. It wouldn't be enough to exhaust his claim against every doctor in the prison. But if the prison didn't complain during the process about his failure to name the doctors and process his claim on the merits and said, no, you don't get drug medication because we don't think you need it. Isn't that exhaustion? Yes, that is our position. And we ask that the Ninth Circuit join all the other circuits who have visited this issue, which now includes the Eleventh Circuit, in addition to six other circuits, and hold that a prison waives an inmate's procedural default if it does decide his grievance on the merits. And unless there are further questions from the Court, I'd like to... What if the prison says, in essence, Dr. Hashimoto didn't make this decision, the Pain Committee did, which is essentially what they're saying here. And therefore, we're going to deny the claim and at every step along the way they say the same thing. Hashimoto didn't make the decision, the Pain Committee did. We deny the claim. Now, your argument would be that now you've exhausted it because they've considered it fully at every step. But if they had said exactly the same thing, but instead of saying, denying it, we're dismissing it because you didn't name the right people, then they wouldn't have exhausted it. I mean, is that your argument? They have to dismiss as opposed to deny? Right. They would have had to decline to accept the grievance for failure to name it. But how could they do that? I mean, they were adjudicating a grievance naming Dr. Hashimoto, which he had named, so they gave a reason for it. I mean, how could they dismiss that? That was proper against Dr. Hashimoto. I mean, the question for us is, if it was proper against Dr. Hashimoto and then they give a reason and he continues the claim, he never changes his claim, why does that exhaust a claim against other people? Well, the prison was on notice that... That Dr. Hashimoto had denied him the pain medication. That's what they were on notice about, right? Well, they were also on notice that they should examine the collective set of decisions leading up to the denial of pain medication. And in fact, the prison officials responding to the grievance were in a better position to know who was involved as compared to an inmate like Mr. Reyes. Do you want to save the rest of your time? Yes, please. Thank you. Good morning. Jose Zeldon Cepeda, Attorney General's Office for Defendants, Dr. Smith and Headlee. I wanted to start with the issue that's been subject to question, what it was going to Judge Hurwitz's question and also what Judge Aikuda brought up. What the prison official, the prison officials could not have rejected Mr. Reyes's grievance as not being procedurally proper because he named someone in particular. And that's what he exhausted. That's what prison officials... But doesn't the Supreme Court tell us that the exhaustion requirement is not aimed at providing notice to individual defendants, but rather notice to the state of what the grievance is so they can address it? Tell me what information here about his grievance you were lacking because he didn't name these particular doctors. This is the information, Judge Hurwitz. What the grievance complained of, to Judge Aikuda's point, was about the actions of the primary care physician. No, I understand. And he, of course, only dealt with the primary care physician. He wasn't dealing with the appeals, the pain committee. So he says, my primary care physician is not giving me medication. And they say that's right because he was told not to by the pain committee. The pain committee agreed with him. You know, I'm not going to quibble about exactly what the pain committee said. And then he appeals that and he says, I should get this medication. I'm in terrible pain. And they say again, no, no, the pain committee says you don't need it. And then he appeals it again. And they say, no, no, the pain committee says you don't need it. So what more information did you need from him in order to adjudicate his grievance? Your Honor, it is a completely different claim for the inmate to complain that a primary care physician is denying a particular form of treatment. Well, and the primary care physician says I'm doing it because somebody else told me not to. And you say on appeal they had good reasons to tell you not to. They determined you didn't need it. So tell me what more information you needed in order to be able to process his grievance fully. This is this is what the response to the grievance said in terms of the reference to the pain committee. It said the pain committee, this is at Exeter's record 59, has determined that narcotics were not medically necessary because you're functioning well with your current treatment. That is a completely different claim that they investigated as opposed to what Mr. Reyes is claiming now, that he was denied a particular medication because there is this blanket policy as a result of saving money. That is a different claim. Put aside whether he's preserved a specific claim about a blanket policy. The question is whether he exhausted a claim that his Eighth Amendment rights were violated because he was never given the appropriate medication. That's his complaint in Federal court. The Eighth Amendment was violated because I wasn't given the medication. The reason he wasn't given it is a separate issue. He says at every step of the way, I want this medication. Dr. Hashimoto told me, you know, told me I couldn't have it. The response at the first level is, well, the pain committee reviewed your case and didn't think it was appropriate. He appeals that. It goes up to the second level, and you say again, well, the pain committee reviewed your case and doesn't think it was appropriate. He appeals again, to the third level, and you say the same thing. I'm just trying to figure out what information you were lacking in this process that would have allowed you to fully process his grievance. Tell me what fact, what fact would have led you to process his grievance differently. The fact that is really important to know is that according to Mr. Reyes in the complaint, it was denied because of a blanket policy, not because of a particular condition. And I'm agreeing with you for a second that he didn't exhaust a claim about a blanket policy. My question is different. Tell me what part of his Eighth Amendment claim, which is that I personally was denied medication, that you lacked information about. There are different ways in which an inmate can allege that his or her rights to adequate medical treatment under the Eighth Amendment can be violated. One could be in a very individual treatment, this particular physician is not treating me appropriately, all the way to the particular system does not provide this particular type of care at all. And that is a different type of claim. And that and because the whole purpose of exhaustion is to give prison officials an opportunity to address that claim. Right. So what what opportunity were you lacking to address his claim? Tell me what opportunity the prison officials were deprived of because of the way he phrased his grievance to address his claim. To the point that Judge Aikuda made, this is this is what they were deprived of. Because Mr. Reyes said my primary care physician has denied me this particular thing, they were not able to investigate his claim now in federal court. That is, there's this blanket policy that caused the denial of this particular treatment for me. If you say at one point one individual denied my rights for a particular reason, that's different than to say you'd be fine with his complaint if he only said I was improperly denied medication without regard to a blanket policy. I think in that situation, if prison officials were able to investigate and find out the reason for it and they dug out that it was. Well, OK. So what you're saying then is that if the prison gives the wrong reason or even fabricates a reason, the prisoner can't then file a lawsuit that that says this is the real reason. No, Your Honor. Because you did you had the opportunity to investigate if the if the reason was because you have a blanket policy, you could have said that. No, Your Honor. And and and the way this the record shows that that's not what actually takes place, because what actually happens through the appeals process is the actual claim is ferreted out. So in this situation, the Mr. Reyes submitted a grievance. They went to investigate this issue and said, OK, your primary care physician said that you don't require this. The first level interviewed and examined Mr. Reyes and said you have adequate range of movement. You don't have any problems. We don't think you need this. And we talked to the pain management committee and they think that this particular medication is not required for your particular treatment. At that point, Mr. Reyes went ahead and appealed at further levels. He didn't he didn't say, well, the reason why I'm not being denied this is because it is a blanket policy. Well, well, let's let's assume everything Reyes says is true, that at all three levels, the pain committee and the primary care physician respond to his grievance by saying we've determined you don't need it. So he files a lawsuit and he finds out through discovery. Well, no, that's not the real reason. The real reason is they now have a blanket policy that they want to save money. Are you saying he has to go back now and exhaust that grievance? No, Your Honor. I'm not necessarily saying that. And well, that seems to be what you're saying is that he can't he can't put forward the real reason because you gave a different reason that he now claims is the false reason. I this case is actually brings up that particular situation because there's no evidence here that Mr. Reyes did not know about the reasons for his denial of this particular treatment. His complaint says he know about this policy. He mentions that in his complaint. He said, when I met with Dr. Hashimoto on this date, he told me that he could not give me this medication because the pain management committee, as part of its money saving policy, was no longer allowing this type of medication. That is his complaint. Can I ask you to switch to your form for a second? Let me tell you what troubles me. You've got prisoners. You say to them, when you want to grieve about medical problems, here's a form we want you to fill out. You change a regulation a few months before this this occurs and you don't modify the form. I take it from this record. The form was later modified to to say, please name all the people. But but he fills out the form, which is, as I see it, accurately and completely. It's the form a prisoner is given. And then you say, yeah, but you should have known about this reg we just passed that required you to provide more information than the form. How did that that seems wrong to me, but I'm not so respond to it. This this is outside the record because this wasn't an issue below. Mr. Reyes never argued that he did not know about this requirement. He did not oppose the motion to dismiss, and he did not know. But he did argue that I filled out the form completely, and that's what the prison told me to do. And so, but if you wanted him to do more, shouldn't you have told him on the form? But if I may, I want to expound on that. I can tell you, and this is outside the record because this was. Well, if it's outside the record, don't expound on it. Okay. But I will point out that as part of its practice, prison officials hand out copies of the regulations to inmates when they come in. Is that in the record? No, it's not. Then don't. I don't want to know about it. But I think it's fair to explain. I won't go ahead and explain. No, it's not fair to go outside the record, so don't go outside the record. I understand, Your Honor. But also, there's nothing that says in the record that Mr. Reyes did not know about this requirement. I understand. He didn't raise that argument, is what you're saying. Correct. He didn't argue that below, even though he didn't oppose the motion to dismiss at all. And when he filed objections to the magistrate judge's findings and recommendations He was pro se at that point. That is correct. Okay. So the question for us is, assuming everyone knew everything, did he exhaust his remedies against Mr. Smith and Mr. Headley, assuming that he was aware that there was no mystery about the regulations? Had the forum had a place for name everyone involved in this, and he had put in Dr. Hashimoto and Mr. Akintola, would our analysis be any different now if in his complaint he then additionally named Smith and Headley? The case law says that it's the prison regulations that require this particular requirement, something that I didn't get a chance to point out earlier, and I think it's important to Judge Hurwitz' question. The forum, if you look at the forum, it says it has certain requirements, and it said, for further information, refer to the regulation and cites the regulation that requires to name all individuals. Given the, if I can finish really quickly, given the fact that the whole purpose of requiring exhaustion is to give prison officials a chance to go ahead and address the grievance, I submit that Mr. Reyes knew the information, he could have I would just like to address two points, the first being that Mr. Reyes did not necessarily have access to the emergency regulation that is purportedly referenced. Well, the record's silent on that. Right. You didn't make a record that he didn't have access to it. The record is just silent. So just as he can't go outside the record, I don't think you can either. Right. But I think the record does reflect, or yes, the record does reflect that the emergency regulation was effective just four months before he filed. And that's all we can tell from the record. Yes. And regarding whether Mr. Reyes actually knew about Dr. Smith and Headley and the rule 12B6 or rule 56, the allegations in the complaint have to be construed in the light most favorable to Mr. Reyes. And the record just shows that he may have heard their names in a conversation on May 2nd, 2011, but he didn't file his grievance until three weeks after that conversation. And he could have simply forgotten. Thank you. All right. The case of Reyes v. Smith is submitted.
judges: Ikuta, Hurwitz, Melloy